UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-00346-R

ANDREW SHEPPARD                                                          PLAINTIFF

v.

MIKE SIMPSON, et al.,                                                    DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon Defendant Mike Simpson's Motion for Summary Judgment (DN 20). Plaintiff has responded (DN 28) and Defendant has replied (DN 29). This motion is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

Also before the Court is Defendants Dr. Ron Waldridge and Southern Health Partners Inc.'s Joint Motion for Summary Judgment (DN 17). Plaintiff has responded (DN 28) and Defendants have replied (DN 30). This motion is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff Andrew Sheppard, *pro se*, is currently incarcerated in the Oldham County Jail ("OCJ") in LaGrange, Kentucky. Sheppard alleges that he suffers from a litany of medical conditions, including carpel tunnel and rheumatoid arthritis, all of which cause him debilitating pain. He claims that the medical staff at OCJ has ignored his repeated requests for treatment and refuse to give him "the right pain medication." DN 1 at 5. He also states that he has dangerously high blood pressure that is not being correctly treated.

Sheppard brings this action under 42 U.S.C. § 1983 and the Eighth Amendment's

1

prohibition of cruel and unusual punishment. He directs the suit against Jailer Mike Simpson[1] in his official capacity, his treating physician at OCJ, Dr. Ronald E. Waldridge, and the company that provides medical services to OCJ, Southern Health Partners, Inc. ("SHP"). As compensation for the shortcomings of his health care, Sheppard seeks damages of $45 million dollars. Defendants now move for summary judgment in this action on a number of different bases.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly

---

[1] Jailer is an elected position in Oldham County, Kentucky.

supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Under 42 U.S.C. § 1983, Congress did not seek to set out substantive rights, but instead provide a vehicle through which individuals could rectify deprivations of previously established rights. The section has two requirements: "(1) state action that (2) deprived an individual of federal statutory or constitutional rights." *Flint v. Ky. Dept. of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citations omitted). Thus, Sheppard must show that Defendants acted under state law to deny him the rights he is owed under the Eighth Amendment.

### I. Mike Simpson

Sheppard alleges that Simpson is responsible for his medical grievances because he ostensibly is exerting some form of control over the treatment provided by Waldridge and SHP.[2] DN 1 at 6. Simpson now moves for summary judgment on two different theories. First, Sheppard's action against him in his official capacity must fail as a matter of law as there are insufficient facts to support such a claim. Second, Simpson states that there is no genuine issue of material fact as to whether medical professionals were deliberately indifferent to Sheppard's medical needs.

Suits against government employees in their official capacity "represent[] only another way of pleading an action against an entity of which [the employee] is an agent." *Monell v. New*

---

[2] Sheppard says in his complaint that "Waldridge works for [SHP] and [SHP] works for Mike Simpson." DN 1 at 6. The statements is incorrect, as the pleadings indicate that SHP is not under the direction of Simpson.

3

*York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). As such, the claim against Simpson in his official capacity is in reality a claim against Oldham County itself.

Suits against municipalities under § 1983 may only be maintained unless two distinct requirements are met: (1) the harm to the plaintiff arose from a constitutional deprivation and (2) the municipality was responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 US 115, 120 (1992). Under this analysis, a municipality may only be held liable for the actions of its employees and agents where its policies or customs have served to cause the constitutional deprivation. *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889-90 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).

After closely reviewing the Complaint, it is clear that Sheppard has failed to craft his initial pleadings in accordance with these legal requirements. The allegations are insufficient to show that there exists a causal connection between the actions of Simpson and the constitutional deprivation that Sheppard is alleging. Indeed, there is no language present that could even be construed as representing a "custom or policy" undertaken by officials at OCJ. While Sheppard may have originally intended to bring an individual capacity suit against Simpson, the Court will not rewrite his unambiguous complaint. As such, this official-capacity action against Sheppard is fatally defective as currently stated.

Setting aside Sheppard's improper official-capacity suit momentarily, his claims under the Eighth Amendment must also fail, as the record before the Court demonstrates that his medical treatment has not been marred by deliberate indifference. The Sixth Circuit has

consistently held that for a prisoner "[t]o establish an Eighth Amendment violation, the plaintiff must show that the defendant acted with deliberate indifference to his basic needs." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). In *Jones v. Muskegon Cnty*, the circuit described the framework necessary for a prisoner to prove a medical claim under the Eighth Amendment:

> A Section 1983 claim asserting "[a] constitutional [violation] for denial of medical care has objective and subjective components." *Id*. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo Cnty*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

625 F.3d 935, 941 (6th Cir. 2010) (internal citations altered). Precedent also distinguishes between violations under the Eighth Amendment for deliberate indifference and situations where a prisoner has been the recipient of inadequate medical treatment. This circuit has cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

The facts indicate that the medical staff in OCJ has not been deliberately indifferent to Sheppard's medical needs. Although he complains that he not receiving the proper prescription medication he needs for his pain, the medical files submitted in the record show that Sheppard is receiving "the strongest [pain] medication within [SHP]'s guidelines." DN 28-1 at 11. Medical professionals further state in his medical files that they are "trying to find out the right

5

combination of medication" that will properly address his pain issues. *Id*. at 13. The medical staff has also explained that more potent medication is unavailable to Sheppard as inmates are not eligible to receive "schedule II narcotic pain medication" while housed in OCJ. *Id*. at 11. Regarding Sheppard's concerns about his blood pressure, not only are nurses at the facility checking it twice daily, but they note that on several occasions it has been within the ranges to be expected. *Id*. at 13. Additional medical records attached to these motions reveal that between April 16, 2008, and December 22, 2010, Sheppard has been seen by OCJ's medical staff at least a half dozen times and been provided prescription medication countless more. *Id*. at 26-31.

To the extent that the health care providers at OCJ have allegedly provided negligent or inadequate medical care for Sheppard's ailments, a "negligent [diagnoses or treatment]" does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Similarly, a prisoner's complaints about the adequacy of treatment do not generally give rise to a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). While Sheppard may not have received the type of treatment or medication he desires, precedent is unambiguous that under the Eighth Amendment, difference of opinion between the prisoner-patient and healthcare professionals is not tantamount to a constitutional claim. *See Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002). Simply put, the record does not sound of the callous doctors and nurses ignoring Sheppard's pleas for medical attention; rather the medical staff of OCJ has been attentive and is working to alleviate and treat his ailments. That these professionals are not up to snuff in Sheppard's eyes does not in turn equate to a constitutional deprivation.

Accordingly, summary judgment is appropriate for Sheppard's claims against Simpson.

**II. Dr. Ronald Waldridge and Southern Health Partners, Inc.**

Waldridge and SHP move for summary judgment on several different grounds. Considering the Court's previous decision that medical professionals have not been deliberately indifferent to Sheppard's medical needs, a thorough analysis of their reasoning is unnecessary.

Accordingly, summary judgment is appropriate for Sheppard's claims against Waldridge and SHP.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendants' Motions for Summary Judgement (DN 17; DN 20) are GRANTED.

An appropriate order shall issue.